RCH:MCM/EDP
F. #2015R01573

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

   - against -                                         22-CR-328 (NGG)

CENTRAL UNITED TALMUDIC
ACADEMY,

            Defendant.

– – – – – – – – – – – – – – – – – – –X

## DEFERRED PROSECUTION AGREEMENT

The defendant CENTRAL UNITED TALMUDIC ACADEMY, also known as Keren Habinyan Hachudosh D'Rabeinu Yoel of Satmar BP, Bais Ruchel D'Satmar and Central UTA ("CUTA"), pursuant to a duly authorized Board of Directors Resolution (a copy of which is attached hereto as Attachment A), and the United States Attorney's Office for the Eastern District of New York (the "Office") hereby enter into this Deferred Prosecution Agreement (the "Agreement").

## Information

1.      CUTA acknowledges and agrees that the Office will file an Information (the "Information"), a copy of which is attached hereto as Attachment B and incorporated herein by reference, in the United States District Court for the Eastern District of New York, charging CUTA with one count of conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349.  By executing the Agreement, CUTA (a) knowingly waives any and all rights it has to have the crime charged in the Information presented to a grand

jury and prosecuted by indictment, (b) waives any and all objections to venue and applicable statutes of limitations, and (c) consents to the filing of the Information and the attached Statement of Facts (a copy of which is attached hereto as Attachment C and incorporated herein by reference). CUTA waves these rights and consents to the foregoing in a knowing and voluntary manner, and in express reliance on the advice of CUTA's counsel.

Term of the Agreement

2.      The Agreement shall be in effect for a period beginning on the date on which the Information is filed and ending 36 months from the later of the date on which the Information is filed or the date on which the independent compliance monitor (the "Monitor") is retained by CUTA, as described in paragraph 12 ("the Term"). CUTA agrees that in the event that the Office determines, in its sole discretion, that CUTA has knowingly violated any provision of the Agreement or has failed to completely perform or fulfill each of CUTA's obligations under the Agreement, an extension or extensions of the Term may be imposed by the Office, in its sole discretion, for up to a total additional time period of 12 months, without prejudice to the Office's right to proceed with the prosecution as provided in paragraph 16 below. Any extension of the Agreement extends all terms of the Agreement, including the terms of the reporting requirement set forth in Attachment E, for an equivalent period. Conversely, in the event the Office finds, it its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment E, and the other provisions of the Agreement have been satisfied, the Agreement may be terminated early. If the Court rejects the Agreement, all provisions of the Agreement shall be deemed null and void, and the Term shall be deemed not to have begun.

Acceptance of Responsibility

3.      CUTA accepts and acknowledges as true the facts set forth in the Information and Statement of Facts, which are incorporated herein by reference.  CUTA acknowledges that, as a result of the conduct of certain executives, officers and employees of CUTA, as described in the Information and the Statement of Facts (the "Unlawful Conduct"), CUTA engaged in, and is criminally culpable for, inter alia, the charged violation of Title 18, United States Code, Section 1349.

4.      CUTA accepts responsibility for the Unlawful Conduct by entering into and committing to fulfill all of its obligations under the Agreement and through, among other things, (a) the remedial actions that CUTA has taken to date and will take (described in paragraphs 5-6) and (b) CUTA's agreement to comply in the future with all applicable laws and regulations including federal, state and local criminal laws and regulations.

Remedial & Other Measures

5.      CUTA represents that CUTA and its current senior management have taken remedial actions in response to the Office's investigation of the Unlawful Conduct at CUTA.  The remedial actions have included and will include the following at CUTA:

(a)      Making organizational changes, including: (i) removing Elozer Porges and Joel Lowy from CUTA employment permanently and ceasing any and all compensation to either individual and/or their surrogates permanently; (ii) retaining an independent accounting firm to ensure compliance with generally accepted accounting practices and relevant law; and (iii) establishing an Oversight Committee consisting of independent professionals to advise the board of directors on compliance issues as they arise.

(b)    Instituting a comprehensive set of policies and procedures, codified as the Compliance Manual (attached as Attachment D), to be used in annual training for all officers and non-union employees regarding CUTA's Code of Business Ethics, as well as laws and requirements relevant to CUTA's specific operations.  Each employee shall be required to acknowledge in writing that he/she: (i) has reviewed the Code of Business Ethics and the annual training materials; (ii) will adhere to the standards set forth therein; and (iii) will report to his/her supervisors any action inconsistent with those standards.

(c)    Ensuring that CUTA establishes a zero-tolerance policy regarding the commission of the activities described above and in Attachments B and C, as well as any other criminal conduct by its directors, officers, employees and agents that may be imputed to CUTA.  In so doing, CUTA shall make every effort to ensure that neither it nor its directors, officers, employees and agents:

> (i)    Submit false statements and/or engage in fraudulent behavior in connection with any government program, including but not limited to programs providing meals, childcare, school benefits and technology support;
>
> (ii)    Engage in deceptive payroll practices, including but not limited to paying employees in unreported cash, coupons, locally-redeemable scrip, undisclosed life or health insurance or other benefits packages; establishing no-show jobs; or providing parsonage exceptions to non-qualifying employees;
>
> (iii)    Provide documentation understating an employee's actual compensation, including but not limited to in circumstances that would permit an employee to use such documentation to engage in benefits fraud; and
>
> (iv)    Accept childcare vouchers from individuals and/or employees who, based on information known to CUTA, do not qualify for such benefits.

6.      Moreover, CUTA agrees that: (a) any policies, procedures or other remedial measures related to the Unlawful Conduct that have not already been implemented will be implemented within 30 days following the date of the execution of the Agreement (unless otherwise extended with the prior written approval of the Office); and (b) it will maintain all policies, procedures and other remedial measures identified in paragraph 5 for the Term of the Agreement.

Payment of Restitution

7.      CUTA has paid restitution in the amount of $3,256,338.68 to the victims of the scheme, the United States Department of Agriculture and the New York State Department of Health.

Payment of a Financial Penalty to the United States

8.      In addition to any payments required in connection with any current or future non-criminal proceedings by agencies not party to the Agreement or by branches of the Department of Justice other than the Office, and in addition to the restitution obligation set forth in paragraph 7, CUTA agrees to pay the sum of five million dollars ($5,000,000.00) as a financial penalty as directed by the Office (the "Penalty").  CUTA agrees to pay the Penalty according to the following schedule: a $1,000,000.00 payment within 90 days of the date of the execution of the Agreement; a $2,000,000.00 payment within 12 months of the date of the execution of the Agreement; and the balance within 36 months of the execution of the Agreement.  If CUTA pays the entire Penalty within 90 days of the execution of the agreement, the Penalty shall be lowered to $4,850,000.

9.      CUTA agrees that it will not, in connection with the financial penalty described in paragraph 8, seek, obtain or accept any reimbursement or other payments or credits

from any insurer of CUTA or any insurer of its divisions or subsidiaries. CUTA also agrees that it will not seek, obtain or accept any tax deduction in connection with the financial penalty described in paragraph 8.

Independent Compliance Monitor

10.    CUTA agrees to retain a Monitor for the three-year term specified in Attachment E. CUTA shall retain the Monitor promptly after his/her selection by the Office pursuant to paragraph 11 below. The Monitor's duties and authority, and the obligations of CUTA with respect to the Monitor and the Office, are set forth in Attachment E, which is incorporated by reference into the Agreement. No later than the date of execution of the Agreement, CUTA will propose to the Office a pool of three qualified candidates to serve as the Monitor. The candidates for the position of the Monitor or their team members shall have, at a minimum, the following qualifications:

(a)    demonstrated expertise with respect to fraud offenses, including but not limited to program fraud, benefits fraud and payroll fraud;

(b)    experience designing and/or reviewing corporate compliance policies, procedures and internal controls;

(c)    the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement; and

(d)    sufficient independence from CUTA to ensure effective and impartial performance of the Monitor's duties as described in the Agreement.

11.    The Office retains the right, in its sole discretion, to choose the Monitor from among the candidates proposed by CUTA, though CUTA may express its preference(s) among the candidates. If the Office determines, in its sole discretion, that any of the candidates

is not qualified or is otherwise ineligible to serve as the Monitor, or if the Office, in its sole discretion, is not satisfied with the proposed candidates, the Office reserves the right to request that CUTA nominate additional candidates.  In the event the Office rejects all proposed Monitors, CUTA shall propose an additional three candidates within 20 business days after receiving notice of the rejection.  This process shall continue until a Monitor acceptable to both parties is chosen.  The Office and CUTA will use their best efforts to select the Monitor within 60 calendar days of the execution of the Agreement.  If, during the term of the monitorship (the "Term of Monitorship"), the Monitor becomes unable to perform his or her obligations as set out herein and in Attachment E, or if the Office in its sole discretion determines that the Monitor cannot fulfill such obligations to the satisfaction of the Office, the Office shall notify CUTA of the release of the Monitor, and CUTA shall within 30 calendar days of such notice recommend a pool of three qualified Monitor candidates from which the Office will choose a replacement.

12.    The Term of Monitorship shall be 36 months from the date on which the Monitor is retained by CUTA, subject to extension or early termination as described in Paragraph 2.  The Monitor's powers, duties and responsibilities, as well as additional circumstances that may support an extension of the Term of Monitorship, are set forth in Attachment E.  CUTA agrees that it will not employ or be affiliated or make any promise or agreement of affiliation with the Monitor or the Monitor's firm (other than affiliation resulting from the Agreement) for a period of not less than 36 months from the date on which the Monitor's term expires or the Monitor otherwise ceases his/her role as the Monitor.  Nor will CUTA discuss with the Monitor or the Monitor's firm the possibility of, or make any promise or agreement regarding, employment or further affiliation during the Monitor's term or for a period

of not less than 36 months from the date on which the Monitor's term expires or the Monitor

otherwise ceases his/her role as the Monitor.

Deferral of Prosecution

14.    In consideration of CUTA's prior payment of restitution and its

commitment to: (a) accept and acknowledge responsibility for the Unlawful Conduct; (b) follow

through with remedial actions; (c) pay the Penalty to the United States of America as set forth in

paragraphs 8-9; (d) comply in the future with all applicable laws, including federal, state and

local criminal laws; and (e) otherwise comply with all of the terms of the Agreement, the Office

shall, at the time it files the Information, simultaneously file a joint motion with CUTA pursuant

to Title 18, United States Code, Section 3161(h)(2), to defer the prosecution of the above-

captioned case for a period of 36 months and to obtain an exclusion of time under the Speedy

Trial Act to allow CUTA to demonstrate good conduct and compliance with the terms of the

Agreement.  By executing the Agreement and joining in said motion, CUTA expressly waives all

rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title

18, United States Code, Sections 3161 et seq., Rule 48(b) of the Federal Rules of Criminal

Procedure and any other applicable statutes or rules, including the Local Rules of the United

States District Court for the Eastern District of New York, for the period during which the

Agreement is in effect.  This waiver in knowing, voluntary and in express reliance on the advice

of CUTA's counsel.

15.    The Office agrees that, if CUTA remains in compliance with all of its

obligations under the Agreement for the 36-month period identified in paragraph 2, the

Agreement shall expire and the Office will, within 30 days of the expiration of the Agreement,

move the Court pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss the

Information with prejudice.  Except in the event of a breach of the Agreement, the Office will bring no additional charges against CUTA relating to or arising out of the Unlawful Conduct set forth in the Information and in Attachment C of the Agreement.

16.    CUTA understands and agrees that should the Office, in its sole discretion, determine that CUTA has deliberately given false, incomplete or misleading information under the Agreement, has otherwise deliberately violated any provisions of the Agreement or has committed, or attempted to commit, any crime other than those set forth in the Information, then CUTA will be subject to prosecution for any crimes of which the Office has knowledge, including prosecution relating to the Unlawful Conduct.  Any such prosecution may be premised on any information provided by or on behalf of CUTA to the Office, or to the Federal Bureau of Investigation, the New York City Department of Investigation or the United States Department of Agriculture (the "Investigating Agencies") at any time.  Moreover, CUTA agrees that any such prosecution relating to the allegations in the Information that are not time-barred by the applicable statute of limitations as of the date of the execution of the Agreement, including by reason of tolling agreement between the Office and CUTA entered into on June 17, 2019, and thereafter extended on September 11, 2019, December 6, 2019, March 6, 2020, June 8, 2020, September 15, 2020, December 14, 2020, March 12, 2021, June 15, 2021, September 14, 2021, December 8, 2021, February 8, 2022, May 11, 2022 and August 9, 2022, may be commenced against CUTA, notwithstanding the expiration of any applicable statute of limitations between the date of the execution of the Agreement and the expiration of the Agreement under paragraph 2.  By the Agreement, CUTA expressly intends to and does waive any and all rights in this respect.  This waiver is knowing, voluntary and in express reliance on the advice of CUTA's

counsel.  Moreover, the commission of an additional crime or crimes by CUTA shall constitute a breach of the Agreement.

17. Furthermore, it is agreed that if the Office, in its sole discretion, determines that CUTA has committed any crime or otherwise violated any provision of the Agreement:

(a) the Agreement and the Information are admissible in any future court proceedings by the Office against CUTA as an admission by CUTA; all statements made by or on behalf of CUTA or any of its directors, officers, employees and agents to the Office or the Investigating Agencies, including its admission that the facts set forth in the Information are true and accurate; and/or any testimony given by CUTA or any of its directors, officers, employees and agents before a grand jury or elsewhere, whether before or after the date of execution of the Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against CUTA; and

(b) CUTA shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence or any other statute or federal rule that statements made by or on behalf of CUTA before or after the date of execution of the Agreement, or any leads derived therefrom, should be suppressed.  However, nothing in the Agreement shall constitute a waiver of any Confrontation Clause rights under the Sixth Amendment to the United States Constitution that CUTA may have.

18. CUTA agrees that it shall not, through its attorneys, Board of Directors, directors, officers, employees or agents, make any public statement, in litigation or otherwise,

contradicting the facts set forth in the Information, its admission that those facts established the elements of offense charged in the Information, or its acceptance of responsibility for the acts of its officers, directors and employees described in the Information.  Any such contradictory statement by CUTA, its present or future attorneys, directors, officers, employees or agents shall constitute a breach of the Agreement and CUTA thereafter shall be subject to prosecution.  The decision as to whether any such contradictory statement will be imputed to CUTA for the purpose of determining whether CUTA has breached the Agreement shall be at the sole discretion of the Office.  Upon receipt of notification by the Office of any such contradictory statement, CUTA may avoid a finding of a breach of the Agreement by publicly repudiating such statement within 72 hours after receipt of notice by the Office.  This paragraph shall not apply to any statement made by any current or former CUTA director, officer or employee who is under investigation or has been charged with a crime or other wrongdoing by the Office or by any other federal, state or local agency.

19.    CUTA agrees that the decision whether conduct or statements of any individual will be imputed to CUTA for the purpose of determining whether CUTA has knowingly, intentionally and materially violated any provision of the Agreement shall be in the sole discretion of the Office.  If the Office determines that CUTA has committed a knowing, intentional and material breach of any provision of the Agreement, the Office shall provide written notice of the alleged breach to CUTA, through its counsel, Marc Mukasey, Mukasey Frenchman LLP, 570 Lexington Avenue, Suite 3500, New York, NY 10022, or to any successor counsel that CUTA may designate, and provide CUTA with a two-week period from the date of receipt of such notice in which to make a presentation to the Office, or its designee, to demonstrate that no breach has occurred, or, to the extent applicable, that the breach was not

knowing, intentional or material.  Upon request by CUTA, the Office may, in its sole discretion, agree in writing to extend this two-week period, including to provide CUTA with an opportunity to cure any breach of the Agreement.  The parties to the Agreement expressly understand and agree that if CUTA fails to make a presentation to the Office, or its designee, within the two-week period (or other period agreed to by the Office), the Office may, in its sole discretion, conclusively presume that CUTA is in knowing, intentional and material breach of the Agreement.  The parties further understand and agree that the exercise of discretion by the Office under this paragraph is not subject to review in any court or tribunal or any other office within the United States Department of Justice.

20.    Except to the extent permitted by the Office, CUTA agrees that if, during the term of the Agreement, it sells or merges all or substantially all of its business operations as they exist as of the date of the Agreement to or into a single purchaser or a group of affiliated purchasers, CUTA shall include in any contract for sale, plan of reorganization or merger a provision binding the purchaser/successor to CUTA's obligations described in the Agreement, provided however that the obligations imposed by the Agreement will not extend to the governance and operation of a purchasing or investing entity that acquires an ownership interest in CUTA, as long as that entity maintains CUTA as a separate corporate entity.  The Office agrees that if a mortgagee that is wholly independent of CUTA's current board of directors, officers, employees and shareholders takes ownership of CUTA through foreclosure, the obligations imposed by the Agreement will not extend to that mortgagee.

21.    It is understood that the Agreement is binding on CUTA and the Office, but specifically does not bind any other federal agencies, any state or local law enforcement agencies or any licensing or regulatory authorities.  However, if requested by CUTA or its

attorneys, the Office will bring to the attention of any such agencies, including but not limited to any licensing authorities, and responsibility hearings or inquiries by any governmental body, the Agreement, CUTA's compliance with its obligations under the Agreement, and any reforms specified in the Agreement.  It is the intent of the parties to the Agreement that the Agreement does not confer or provide any benefits, privileges or rights to any individual or entity other than the parties hereto, and that the Agreement, including its attachments, shall be admissible in any proceeding brought by the Office.  Moreover, CUTA may raise defenses or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not otherwise violate any term of the Agreement.

22.     Except as set forth herein, the Agreement in no way limits or affects any right, including right of inspection and/or enforcement, held by the United States or any other governmental body, pursuant to applicable federal, state or local laws, regulations or permits.  In addition, nothing herein shall be read in any way to alter, affect, abrogate or impair the ability and obligation of the United States to take any investigative or enforcement action for any future conduct, including but not limited to any administrative, civil or criminal enforcement action, or to make any inquiry of CUTA concerning any present or future alleged violation of federal law, regulation or order.

23.     The Office has concluded that deferring prosecution in this case is appropriate because of CUTA's acceptance of responsibility and a determination that deferral will likely meet all of the goals of prosecution.

24.     CUTA and the Office agree that, upon the filing of the Information in accordance with paragraph 1, the Agreement (including its attachments) shall be publicly filed in the United States District Court for the Eastern District of New York.

25.    The Agreement sets forth all the terms of the agreement between CUTA and the Office.  No modifications or additions to the Agreement shall be valid unless they are in writing and signed by the Office, CUTA's attorney and a duly authorized representative of CUTA.  The Agreement supersedes all prior promises, agreements or conditions between the parties, except for the tolling agreement between the Office and CUTA entered into on June 17, 2019, and thereafter extended on September 11, 2019, December 6, 2019, March 6, 2020, June 8, 2020, September 15, 2020, December 14, 2020, March 12, 2021, June 15, 2021, September 14,

2021, December 8, 2021, February 8, 2022, May 11, 2022 and August 9, 2022. To become

effective, the Agreement must be signed by all signatories listed below. The Agreement may be

signed in counterparts.

Dated:        Brooklyn, New York
               Oct. 24 , 2022

                                 BREON PEACE
                                 United States Attorney
                                 Eastern District of New York

By: _____

                                 Erik Paulsen
                                 Assistant United States Attorney

                                 Ryan Harris
                                 Chief, Public Integrity Section

                                 Agreed and Consented to by:
                                 CUTA.

By: _____

                                 Cheskel Berkowitz
                                 Yoel Weisz
                                 Board-Designated Representatives

                                 Approved by:
                                 MUKASEY FRENCHMAN LLP
                                 Attorneys for CUTA

By: _____

                                 Marc Mukasey, Esq.
                                 Robert Frenchman, Esq.
                                 MUKASEY FRENCHMAN LLP
                                 570 Lexington Ave, Suite 3500
                                 New York, NY 10022