ATTACHMENT E

INDEPENDENT COMPLIANCE MONITOR

The duties and authority of the Independent Compliance Monitor (the "Monitor"), and the obligations of CENTRAL UNITED TALMUDIC ACADEMY, also known as Keren Habinyan Hachudosh D'Rabeinu Yoel of Satmar BP, Bais Ruchel D'Satmar and Central UTA ("CUTA"), on behalf of itself and its subsidiaries and affiliates, with respect to the Monitor and provisions of the Agreement between CUTA and the United States Attorney's Office for the Eastern District of New York (the "Office") relating to the Monitor are as described below:

Monitor's Mandate

1.      CUTA will retain the Monitor for a period of 36 months (the "Term of Monitorship"), unless the early termination provision of Paragraph 2 of the Deferred Prosecution Agreement (the "Agreement") is triggered.

2.      The Monitor's primary responsibility is to assess and monitor CUTA's compliance with the terms of the Agreement, including the compliance program documented in Attachment D to the Agreement, so as to specifically address and reduce the risk of any recurrence of CUTA's criminal misconduct.  During the Term of Monitorship, the Monitor will evaluate, in the manner set forth below, the effectiveness of the internal accounting controls, record-keeping and financial reporting policies and procedures of CUTA as they relate to CUTA's current and ongoing compliance with applicable law, and take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate").  The Mandate shall include an assessment of the Board of Directors' and senior management's commitment to, and effective implementation of, the compliance program described in Attachment D of the Agreement.

1

### CUTA's Obligations

3.      CUTA shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about CUTA's compliance program in accordance with the principles set forth herein and applicable law.  To that end, CUTA shall: facilitate the Monitor's access to CUTA's documents and resources; not limit such access, except as provided in Paragraphs 5-6; and provide guidance on applicable local law.  CUTA shall provide the Monitor with access to all information, documents, records, facilities and employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under the Agreement.  CUTA shall use its best efforts to provide the Monitor with access to CUTA's former employees and its third-party vendors, agents and consultants.

4.      Any disclosure by CUTA to the Monitor concerning fraudulent acts, misstatements, false books and records and/or internal control failures shall not relieve CUTA of any otherwise applicable obligation to truthfully disclose such matters to the Office pursuant to the Agreement.

### Withholding Access

5.      The parties agree that no attorney-client relationship shall be formed between CUTA and the Monitor.  In the event that CUTA seeks to withhold from the Monitor access to information, documents, records, facilities or statements of current or former employees of CUTA that may be subject to a claim of attorney-client privilege or the attorney work product doctrine, or where CUTA reasonably believes production would otherwise be inconsistent with applicable law, CUTA shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

2

6. If the matter cannot be resolved, at the request of the Monitor, CUTA shall promptly provide written notice to the Monitor and the Office. Such notice shall include a general description of the nature of the information, documents, records, facilities or current or former employees that are being withheld, as well as the legal basis for withholding access. The Office may then consider whether to make a further request for access to such information, documents, records, facilities or employees.

### Monitor's Coordination with CUTA and Review Methodology

7. To carry out the Mandate, the Monitor shall conduct an initial review and develop an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of the Agreement. In developing such an understanding, the Monitor is to rely to the extent possible on available information and documents provided by CUTA. It is not intended that the Monitor will conduct his or her own inquiry into the historical events that gave rise to the Agreement.

8. The Monitor's reviews should use a risk-based approach; thus, the Monitor is not expected to conduct a comprehensive review of all activities. In carrying out the Mandate, the Monitor should consider, for instance, risks presented by given categories of activities. In undertaking the reviews to carry out the Mandate, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including CUTA's current policies and procedures; (b) on-site observation of CUTA procedures, including internal accounting controls, record-keeping and internal audit procedures; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, business partners, agents and other persons at mutually convenient times and places; and (d) analyses and testing of CUTA's compliance program.

3

9.      In carrying out the Mandate, to the extent appropriate under the circumstances, the Monitor should coordinate with CUTA personnel, including in-house counsel, compliance personnel and internal auditors, on an ongoing basis.  The Monitor may rely on the product of CUTA's processes, such as the results of audits and analyses conducted by or on behalf of CUTA, as well as CUTA's internal resources (e.g., legal, compliance and internal audit), which can assist the Monitor in carrying out the Mandate through increased efficiency and CUTA-specific expertise, provided that the Monitor has confidence in the quality of those resources.

Monitor's Work Product

10.      During the Term of Monitorship, the Monitor shall provide written updates to the Office when he/she deems it appropriate, or upon the request of the Office.  The Monitor should consult with CUTA concerning his/her findings and recommendations on an ongoing basis and should consider CUTA's comments and input to the extent the Monitor deems appropriate.  The Monitor may also choose to share a draft of any reports with CUTA prior to finalizing them.  The Monitor's reports need not recite or describe comprehensively CUTA's history or compliance policies, procedures and practices, but, rather, may focus on those areas with respect to which the Monitor wishes to make recommendations, if any, for improvement or which the Monitor otherwise concludes merit particular attention.

11.      No later than 60 days before the end of the Term, the Monitor shall submit to the Office a final written report ("Certification Report"), setting forth an overview of CUTA's remediation efforts to date, including the implementation status of the Monitor's recommendations, and an assessment of the sustainability of CUTA's remediation efforts.  No later than 30 days before the end of the Term, the Monitor shall certify whether CUTA's

4

compliance program, including its policies and procedures, is reasonably designed and implemented to prevent and detect unlawful conduct.

<u>Monitor's Discovery of Potential or Actual Misconduct</u>

12.     Except as set forth below in sub-paragraphs (a), (b) and (c), should the Monitor discover during the course of his/her engagement that CUTA, its directors or employees have engaged in misconduct, including but not limited to the fraud described in paragraphs 6 through 30 in the Statement of Facts, and described as "Unlawful Conduct" in the Deferred Prosecution Agreement (hereinafter "Potential Misconduct"), the Monitor shall immediately report the Potential Misconduct to CUTA's Board of Directors and Executive Director for further action, unless the Potential Misconduct was already so disclosed.  The Monitor also may report Potential Misconduct to the Office at any time, and shall report Potential Misconduct to the Office when the Office requests the information.

(a)     In some instances, the Monitor should immediately report the Potential Misconduct directly to the Office and not to CUTA.  The presence of any of the following factors militates in favor of reporting the Potential Misconduct directly to the Office and not to CUTA, namely, where the Potential Misconduct: (1) poses a risk to public health or safety or the environment; (2) involves senior management of CUTA; (3) involves obstruction of justice; or (4) otherwise poses a substantial risk of harm.

(b)     If the Monitor believes that any aspect of the Potential Misconduct actually occurred or may constitute a criminal or regulatory violation ("Actual Misconduct"), the Monitor shall immediately report the Actual Misconduct to the Office.  When the Monitor discovers Actual Misconduct, the Monitor shall disclose the Actual Misconduct solely to the

Office, and, in such cases, disclosure of the Actual Misconduct to the Board of Directors and Executive Director should occur as the Office deems appropriate under the circumstances.

(c)    The Monitor shall address in his/her reports the appropriateness of CUTA's response to disclosed Potential Misconduct or Actual Misconduct, whether previously disclosed to the Office or not.  Further, if CUTA or any entity or person working directly or indirectly for or on behalf of CUTA withholds information necessary for the performance of the Monitor's responsibilities and the Monitor believes that such withholding is without just cause, the Monitor shall also immediately disclose that fact to the Office and address CUTA's failure to disclose the necessary information in his or her reports.

13.    Neither CUTA nor anyone acting on its behalf shall take any action to retaliate against the Monitor for any such disclosures or for any other reason.

## Meetings During the Term of Monitorship

14.    The Monitor shall meet with the Office upon request.  At least annually, and more frequently if appropriate, representatives from CUTA and the Office will meet to discuss the monitorship and any suggestions, comments or improvements CUTA may wish to discuss with or propose to the Office, including with respect to the scope or costs of the monitorship.

## Contemplated Confidentiality of Monitor's Reports

15.    Reports issued by the Monitor may include personal, financial and/or confidential information.  Moreover, public disclosure of the reports could discourage cooperation, or impede pending or potential government investigations and thus undermine the objectives of the monitorship.  For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the

6

Office and CUTA in writing, or except to the extent that the Office determines in its sole discretion that disclosure would be in furtherance of the Office's discharge of its duties and responsibilities or is otherwise required by law.